## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GERARD BURNEY,

     Plaintiff,                              CIVIL DIVISION:

vs.                                       CASE NO.:

CITY OF CLEARWATER,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, GERARD BURNEY, (hereinafter "Plaintiff" or "Mr. Burney"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, CITY OF CLEARWATER, (hereinafter "Defendant" or "the City") and alleges:

## JURISDICTION AND VENUE

1.     This is an action for damages which exceed fifty thousand dollars ($50,000).

2.     This is a civil action under federal law by Plaintiff against his former employer for monetary damages, declaratory relief and for other equitable relief pursuant to Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), the Florida Civil Rights Act, and 42 U.S.C. § 1981.

3.     This Court has jurisdiction of the claims herein pursuant to 28 U.S.C § 1331.

4.     The claims that arise under state law arise out of the same nexus of operative facts, and this Court therefore has supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367.

1

5.    Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Pinellas County, which is located within the Middle District of Florida.

## PARTIES

6.    Plaintiff, GERARD BURNEY, is an African American male who resides in Pinellas County, Florida, located in the Middle District of Florida.

7.    At all times material, Defendant, CITY OF CLEARWATER, has been organized and in existence within Pinellas County, Florida, located in the Middle District of Florida.

## ADMINISTRATIVE PREREQUISTES

8.    Plaintiff has satisfied all conditions precedent to filing this action. Between November 18, 2019, and March 22, 2021, Mr. Burney timely filed six Charges of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against the City. These actions operated as dual filings with the Florida Commission on Human Relations (FCHR) pursuant to the EEOC/FCHR workshare agreement. In the Charge of Discriminations, Mr. Burney alleged that he was the subject of unlawful discrimination based upon his race and sex and that he suffered retaliation for engaging in a protected activity.

9.    On January 10, 2023, the EEOC issued Mr. Burney a Notice of Suit Rights.

## GENERAL ALLEGATIONS

10.    On or around November 4, 2014, Mr. Burney began working for the City as

a Parks Service Technician I in the Parks and Recreation Department and earning $10 an hour.

11.     On October 15, 2016, Mr. Burney was promoted to the Public Utilities Department as a Public Utilities Technician I.

12.     As a Public Utilities Technician I, Mr. Burney earned $15 in hourly wages and worked 40 hours a week.

13.     On September 16, 2017, Rose Lara (white female) was promoted from Public Utilities Supervisor I to the Public Utilities Supervisor II which gave her authority over Mr. Burney.

14.     On November 5, 2017, Mr. Burney received a good performance evaluation from Rose Lara's boss, Glenn Daniel.

15.     In January 2018, Mr. Burney was the target of a prank by employee, Cortez Hearns (black male), which exposed him to noxious fumes and caused him to become physically sick.

16.     Mr. Hearns recorded this prank without Mr. Burney's knowledge or consent and posted the video on his YouTube Channel.

17.     Mr. Hearns used the N-word several times during the duration of the video.

18.     On March 1, 2018, Mr. Burney was placed on a six-month development plan because of the video posted by Mr. Hearns.

19.     In Mr. Burney's position as a Public Utilities Technician I, Mr. Burney had the opportunity to undertake "JPG" training which would allow him to take on extra work for extra pay.

20.     Starting in May 2018, Ms. Lara required Mr. Burney to have forty hours of operator time on heavy equipment to be qualified for "JPG" but did not require that of Mr. Burney's co-worker Nathan Huffman who was Caucasian.

21.     On or around, May 30, 2018, Mr. Burney reported to City Human Resources Director, Dieunice Deris, that Ms. Lara had required Mr. Burney to undertake 40 more hours than others to be signed off on JPG to qualify for additional work and pay. He specifically complained that Ms. Lara was not requiring one of Mr. Burney's white coworkers to put in the extra forty (40) hours to qualify for JPG training.

22.     In or around June, 2018, Mr. Burney was promoted to Public Utilities Technician II, earning an hourly wage of $19 per hour worked.

23.     In October 2018, Mr. Burney received a good performance evaluation from Mr. Daniel.

24.     On November 1, 2018, Mr. Deris spoke with Ms. Lara about Mr. Burney's complaint.

25.     On November 6, 2018, Ms. Lara told Mr. Burney that she knew he had gone to Human Resources about her.

26.     On the same day, Ms. Lara gave Mr. Burney an assignment, allowed him to leave in a City vehicle, and then accused him of being under the influence of marijuana when he returned to work.

27.     Ms. Lara drove Mr. Burney to take a drug test and the results were negative.

28.     That same day, on November 6, 2018, Mr. Burney reported to Mr. Deris that he was being retaliated against by Ms. Lara.

29.    On December 21, 2018, Mr. Burney was told by a supervisor to hurry to an emergency job, but when he arrive Ms. Lara accused Mr. Burney of "looking confused. There was no basis for this statement as it was only meant to undermine him in front of others and falsely insinuate he was under the influence of drugs.

30.    Later that date, Mr. Burney reported Mr. Lara to his immediate supervisor, Gerald Wells, and complained that Ms. Lara made unfounded allegations of Mr. Burney being "under the influence," again.

31.    In February of 2019, Mr. Burney was the target of another prank by Mr. Hearns which again exposed him to noxious fumes and caused him to become physically sick.

32.    Despite being the victim, on February 27, 2019, the Defendant suspended Mr. Burney for a day "for his involvement" in the prank. Specifically, he was disciplined for using profanity. Again, Mr. Burney was placed on a six-month development plan.

33.    On or around March 3, 2019, Ms. Lara accused Mr. Burney, loudly and in the front of other employees, of touching his coworker, Kevin Poole's, buttocks.  Her allegation was meant to insinuate that Mr. Burney was homosexual to other employees and that he was sexually harassing his co-workers.

34.    Mr. Poole responded that Mr. Burney only touched his leg, but Ms. Lara continued to push Mr. Poole to change his story.

35.    Mr. Burney reported Ms. Lara's accusations to Mr. Wells and complained that Ms. Lara was making insinuations about Mr. Burney's sexuality and falsely accusing him of sexual harassment.

36.     On April 25, 2019, Mr. Burney was coached and counseled for calling Ms. Lara "scorned" and for saying that she was "making things up about him" at a meeting on April 10, 2019.

37.     On October 14, 2019, Mr. Burney met with Mr. Deris and complained about a comment Mr. Lara made on October 9, 2019, in the presence of Liberian Miles and Mr. Huffman regarding Mr. Burney's sexuality.

38.     Mr. Huffman told Mr. Burney that Mr. Miles made a comment about Mr. Burney being "suspect."

39.     Ms. Lara laughed and responded that she sees Mr. Burney hugging Mr. Lang and that Mr. Burney is a "touchy feely" type of guy.

40.     Mr. Burney met with Mr. Wells and Ms. Lara to discuss what Ms. Lara had said about Mr. Burney.

41.     After the meeting, Ms. Lara reported that Mr. Burney was "speaking in a very hostile demeanor," and stated she had to move behind Mr. Wells to whom she stated "look how angry and hostile he is…it scares me."

42.     Mr. Wells told City Administrators, Barry Robinson and Glenn Daniel, that Ms. Lara's description of the meeting was false and that Mr. Burney had not been hostile.

43.     Both Mr. Burney and Ms. Lara met with Mr. Deris separately to speak about the incident.

44.     On October 21, 2019, Mr. Deris met with Mr. Burney to inform him that his complaints were closed regarding Ms. Lara questioning his sexuality.

45.     Mr. Deris then advised Mr. Burney to stop touching/hugging employees.

46.    On November 1, 2019, the City held a discipline meeting with Mr. Burney over Ms. Lara's claims about how Mr. Burney acted in the October 9, 2019 meeting even though Mr. Wells reported that Ms. Lara's version of events was not accurate.

47.    On November 18, 2019, Mr. Burney filed an EEOC Charge against the City for sex and race discrimination.

48.    On November 22, 2019, the City's Human Resources Division received an EEOC Charge from the Pinellas County Office of Human Rights regarding Mr. Burney's claim of discrimination.

49.    On December 17, 2019, Public Utilities Administrator, Dave Porter, and HR Representative, Jennifer Poirrier, met with Mr. Burney, issued discipline, and advised him that he will be demoted/transferred to a vacant trainee position in water distribution on December 23, 2019.

50.    On December 24, 2019, the City's HR Division received another EEOC Charge made by Mr. Burney against the City for race and sex discrimination and retaliation.

51.    Mr. Burney was told he can only park in certain areas on City property and cannot clock-in where he used to.

52.    Mr. Burney sent an e-mail to Mr. Wells complaining about this and says that he felt like he was being harassed.

53.    On December 31, 2019, the City's HR Division received a third EEOC Charge made by Mr. Burney against the City for race and sex discrimination and retaliation.

54.    Prior to March 2020, Ms. Lara resigned.

55.    Between March 2, 2020, and March 2021, Mr. Burney repeatedly asked to be returned to his position as a Public Utilities Technician II, but Defendant blocked him from interviewing, despite the position being open.

56.    On March 22, 2021, Mr. Burney was finally allowed to interview for the Public Utilities Technician II position.

57.    However, during the interview process, Freda Daniels in the City Human Resources Department tried to interfere with the interview.

58.    Mr. Burney was in another room when the interviewers were discussing and scoring his interview.

59.    The interviewers were speaking loud enough that Mr. Burney could hear them.

60.    Mr. Burney was able to hear that Ms. Daniels discriminated against Mr. Burney and coerced the other interviewers to lower Mr. Burney's interview score.

61.    Ultimately, the City hired Mr. Burney back as a Public Utilities Technician II.

62.    However, in October 2022, Mr. Burney was denied a raise that other employees in his position were given because he "hadn't been in the department long enough," despite the years he had served prior to his involuntary demotion.

63.    Plaintiff has incurred costs and attorney's fees in bringing this matter.

<u>COUNT I</u>
## TITLE VII RACE DISCRIMINATION

64.     Plaintiff, GERARD BURNEY, re-alleges and incorporates by reference the allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

65.     The Defendant is an "employer" within the meaning of Title VII.

66.     Mr. Burney was an "employee" of Defendant within the meaning of Title VII.

67.     Mr. Burney is a member of a protected class because of his race, and, therefore, is protected by Title VII.

68.     Mr. Burney was qualified to perform his job duties.

69.     Defendant discriminated against Mr. Burney when it failed to perform an adequate independent investigation of the allegations made by Mr. Burney against Ms. Lara.

70.     Mr. Burney experienced a hostile work environment because of his race.

71.     Defendant took adverse employment actions against Mr. Burney, including demoting him, blocking him from reapplying for the higher paying position of Public Utilities Technician II, and denying him a raise.

72.     Defendant's decision to demote Mr. Burney, block him from reapplying for the higher paying position, and deny him a raise was motivated by his race.

73.     Defendant's actions in permitting the on-going discrimination of Mr. Burney were reckless, willful, and/or malicious.

74.     As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment compensation, privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Burney has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Burney respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

(a)     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Burney;

(b)     Back pay;

(c)     Front pay;

(d)     Compensatory damages against Defendant;

(e)     Prejudgment interest; and

(f)     Damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant.

## <u>COUNT II</u>
### TITLE VII SEX DISCRIMINATION

75.     Plaintiff, GERARD BURNEY, re-alleges and incorporates by reference the allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

76.     The Defendant employed fifteen or more individuals. Therefore, Defendant was an "employer" within the meaning of Title VII.

10

77.    Mr. Burney was an "employee" of Defendant within the meaning of Title VII.

78.    Mr. Burney is a member of a protected class because of his sex, and, therefore, is protected by Title VII.

79.    Mr. Burney was qualified to perform his job duties.

80.    Defendant discriminated against Mr. Burney when it failed to perform an adequate independent investigation of the allegations made by Mr. Burney against Ms. Lara.

81.    Mr. Burney experienced a hostile work environment because of his sex.

82.    Defendant took adverse employment actions against Mr. Burney, including demoting him, blocking him from reapplying for the higher paying position of Public Utilities Technician II, and denying him a raise.

83.    Defendant's actions to demote Mr. Burney, block him from reapplying for the higher paying position, and deny him a raise were taken because of his sex.

84.    Defendant's actions in permitting the on-going discrimination of Mr. Burney were intentional, reckless, willful, and/or malicious.

85.    As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment compensation, privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Burney has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Burney respectfully invokes the remedial powers of this Court, as provided in Title VII, and prays for a judgment:

(a)    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Burney;

(b)    Back pay;

(c)    Front pay;

(d)    Compensatory damages against Defendant;

(e)    Prejudgment interest; and

(f)    Damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant.

**COUNT III**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**FOR DISCRIMINATION ON THE BASIS OF RACE**

86.    Plaintiff, GERARD BURNEY, re-alleges and incorporates by reference the allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

87.    The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq*. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's sex.

88.    Mr. Burney has satisfied all procedural and administrative requirements set forth in the FCRA.

89.    Mr. Burney is a member of a protected class because of his race and, therefore, is protected by the FCRA.

90.     Defendant discriminated against Mr. Burney when it failed to perform an adequate independent investigation of the allegations made by Mr. Burney against Ms. Lara.

91.     Mr. Burney experienced a hostile work environment because of his race.

92.     Defendant took adverse employment actions against Mr. Burney, including demoting him, blocking him from reapplying for the higher paying position of Public Utilities Technician II, and denying him a raise.

93.     Defendant's decision to demote Mr. Burney, block him from reapplying for the higher paying position, and deny him a raise was motivated by his race.

94.     Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Mr. Burney's employment in violation of the FCRA.

95.     As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment compensation, privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Burney has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Burney respectfully invokes the remedial powers of this Court as provided in the FCRA, and prays for a judgment:

(a)     Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Burney;

(b)     Back pay;

(c)     Front pay;

(d)     Compensatory damages against Defendant;

(e)     Prejudgment interest;

(f)     Damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant; and

(g)     Reasonable attorney's fees and costs incurred in this action as provided in Section 760.11(5), Florida Statutes.

**COUNT IV**
**VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**
**FOR DISCRIMINATION ON THE BASIS OF SEX**

96.     Plaintiff, GERARD BURNEY, re-alleges and incorporates by reference the allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

97.     The Florida Civil Rights Act of 1992, Fla. Stat. § 760.01 *et seq.* ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's sex.

98.     Mr. Burney has satisfied all procedural and administrative requirements set forth in the FCRA.

99.     Mr. Burney is a member of a protected class because of his sex and, therefore, is protected by the FCRA.

100.     Defendant discriminated against Mr. Burney when it failed to perform an adequate independent investigation of the allegations made by Mr. Burney against Ms. Lara.

101.    Mr. Burney experienced a hostile work environment because of his sex.

102.    Defendant took adverse employment actions against Mr. Burney, including demoting him, blocking him from reapplying for the higher paying position of Public Utilities Technician II, and denying him a raise.

103.    Defendant's decision to demote Mr. Burney, block him from reapplying for the higher paying position, and deny him a raise was motivated by his sex.

104.    Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Mr. Burney's employment in violation of the FCRA.

105.    As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment compensation, privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Burney has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Burney respectfully invokes the remedial powers of this Court as provided in the FCRA, and prays for a judgment:

(h)    Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Burney;

(i)    Back pay;

(j)    Front pay;

(k)    Compensatory damages against Defendant;

(l)    Prejudgment interest;

(m)    Damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant; and

(n)    Reasonable attorney's fees and costs incurred in this action as provided in Section 760.11(5), Florida Statutes.

<u>**COUNT V**</u>
**VIOLATION OF 42 U.S.C. § 1981**

106.    Plaintiff, GERARD BURNEY, re-alleges the General Allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

107.    42 U.S.C. § 1981 prohibits racial discrimination in the making and enforcement of contracts.

108.    Mr. Burney is an African American male.

109.    Mr. Burney is a member of protected class under § 1981 on the basis of his race.

110.    Mr. Burney was qualified to perform his job duties.

111.    Mr. Burney was subject to disparate treatment by Defendant, based solely on his race. This treatment by the Defendant has affected the terms and conditions of Plaintiff's employment.

112.    Defendant discriminated against Mr. Burney when it failed to perform an adequate independent investigation of the allegations made by Mr. Burney against Ms. Lara.

113.    Mr. Burney experienced a hostile work environment because of his race.

114.    Defendant took adverse employment actions against Mr. Burney, including demoting him, blocking him from reapplying for the higher paying position of Public Utilities Technician II, and denying him a raise.

115.    Defendant's decisions to demote Mr. Burney, block him from reapplying for the higher paying position, and deny him a raise were motivated by his race.

116.    Defendant's actions in permitting the on-going discrimination of Mr. Burney were reckless, willful, and/or malicious.

117.    The foregoing actions constitute unlawful discrimination, in violation of § 1981.

118.    Defendant engaged in discrimination against Mr. Burney with malice and reckless indifference to Mr. Burney's federal rights.

119.    As a direct and proximate result of Defendant's unlawful discrimination, Mr. Burney has suffered past and future wage losses, severe emotional distress damages, loss of capacity to earn income, loss of enjoyment of life, loss of professional standing, and has incurred litigation costs.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court and prays for a judgment:

(a)    Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(b)    Awarding Plaintiff compensatory damages against Defendant for the mental anguish, suffering, inconvenience and emotional pain, up to the maximum amount permitted under 42 USC § 1981;

(c)    Award punitive damages as permitted under 42 USC § 1981;

(d)    Awarding reasonable attorney's fees and costs incurred in this action; and

(e)    Any such other and further relief as this Court deems just and equitable.

## <u>COUNT VI</u>
## TITLE VII RETALIATION

120.    Plaintiff, GERARD BURNEY, re-alleges the General Allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

121.    Defendant is an employer as that term is used under the applicable statutes referenced above.

122.    The actions of the Defendant constitute a violation of Title VII in that the Defendant has retaliated against Mr. Burney for his objection to the discrimination against him.

123.    Mr. Burney is a member of a protected class and protected by Title VII from discrimination based on his race and sex.

124.    Mr. Burney's complaints to Mr. Deris and the EEOC that he was being discriminated against based on his race and sex were protected conduct that Plaintiff reasonably believed was unlawful.

125.    Mr. Burney engaged in a protected activity when he reported race-based and sex-based discrimination and a hostile work environment to Mr. Deris and the EEOC.

126.    Mr. Burney's protected activity was a but-for cause of his resulting injury.

127.    Defendant failed to perform an adequate independent investigation of Mr. Burney's report of a hostile work environment before demoting him.

128.    Defendant acted with intent, malice and reckless disregard for Plaintiff's protected rights and punished him because of his reports of illegal race-based and sex-based discrimination and a hostile work environment based on race.

129.    As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Plaintiff has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Plaintiff respectfully invokes the remedial powers of this Court as provided in Title VII and prays for a judgment:

(a)    Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(b)    Awarding Plaintiff compensatory damages against Defendant;

(c)    Awarding reasonable attorney's fees and costs incurred in this action; and

(d)    Any such other and further relief as this Court deems just and equitable.

## COUNT VII

## VIOLATION OF THE FCRA FOR RETALIATION

130.    Plaintiff, GERARD BURNEY, re-alleges the General Allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

131.    The Florida Civil Rights Act of 1992, Fla. Stat. § 760 *et al*. ("FCRA") makes it unlawful to discriminate against any individual in the terms, conditions, or privileges of employment based on that person's engagement in a protected activity.

132.    Mr. Burney is a member of a protected class and protected by the FCRA from discrimination based on his race and sex.

133.    Mr. Burney's complaints to Mr. Deris and the EEOC that he was being discriminated against based on his race and sex were protected conduct that Plaintiff reasonably believed was unlawful.

134.    Mr. Burney engaged in a protected activity when he reported race-based and sex-based discrimination and a hostile work environment to Mr. Deris and the EEOC.

135.    The actions of the Defendant constitute a violation of the FCRA in that the Defendant has retaliated against Mr. Burney for his objection to the discrimination against him.

136.    Mr. Burney's protected activity was a but-for cause of his resulting injury.

137.    Defendant failed to perform an adequate independent investigation of Mr. Burney's report of a hostile work environment before demoting him.

138.    Defendant is liable for the discrimination alleged herein. These actions all adversely affected the terms and conditions of Plaintiff's employment in violation of the

FCRA. Defendant is also liable for wrongfully demoting Plaintiff's employment in retaliation for reporting illegal discrimination, or activity that Plaintiff reasonably believed to be illegal discrimination.

139.   Defendant acted with intent, malice and reckless disregard for Plaintiff's protected rights when it punished him because of his reports of illegal race-based and sex-based discrimination and a hostile work environment based on race.

140.   As a direct and proximate result of Defendant's acts, Mr. Burney has suffered loss of employment, loss of compensation, loss of privileges and benefits, and has suffered and continues to suffer mental and emotional distress, humiliation, expense, embarrassment, and damage to his professional reputation. Mr. Burney has suffered and will continue to suffer irreparable injury caused by Defendant's illegal conduct.

**WHEREFORE**, Mr. Burney respectfully invokes the remedial powers of this Court as provided in the Florida Civil Rights Act of 1992, and prays for a judgment:

(a)   Preliminarily and permanently enjoining and restraining Defendant from engaging in acts of discrimination against Mr. Burney;

(b)   Back pay;

(c)   Front pay;

(d)   Compensatory damages against Defendant;

(e)   Prejudgment interest;

(f)   Damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant; and

(g)    Reasonable attorney's fees and costs incurred in this action as provided in Section 760.11(5), Florida Statutes.

## COUNT VIII
## RETALIATION IN VIOLATION OF 42 U.S.C. § 1981

141.    Plaintiff, GERARD BURNEY, re-alleges the General Allegations set forth above in paragraphs one (1) through sixty-three (63) as if set forth fully herein.

142.    The above-described discriminatory treatment committed by Defendant violated 42 U.S.C. § 1981 by infringing on Mr. Burney's right to contract for, obtain, and maintain employment free of racial discrimination.

143.    Mr. Burney's complaints to Mr. Deris and the EEOC that he was being discriminated against based on his race were protected conduct that Plaintiff reasonably believed was unlawful.

144.    Mr. Burney engaged in a protected activity when he reported race-based discrimination and a hostile work environment to Mr. Deris and the EEOC.

145.    Mr. Burney's protected activity was a but-for cause of his resulting injury.

146.    The actions of the Defendant constitute a violation of 42 U.S.C. § 1981 in that the Defendant has retaliated against Mr. Burney for his objection to the discrimination against him.

147.    Defendant failed to perform an adequate independent investigation of Mr. Burney's report of a hostile work environment before de him.

148.    Defendant's treatment of Mr. Burney, as discussed above, was causally connected to Mr. Burney's protected activity and thus violated 42 U.S.C. § 1981's proscription against retaliation for opposing discriminatory employment practices.

149.    As a direct and proximate result of the aforementioned acts, plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of employment benefits, distress, humiliation, great expense, embarrassment, and damage to his reputation.

**WHEREFORE**, Mr. Burney demands judgment against defendant as follows:

(a)    Awarding Plaintiff back pay, front pay, prejudgment interest, and damages for all employment benefits he would have received but for the discriminatory acts and practices of Defendant;

(b)    Awarding Plaintiff compensatory damages against Defendant for the mental anguish, suffering, inconvenience and emotional pain, up to the maximum amount permitted under 42 USC § 1981;

(c)    Award punitive damages as permitted under 42 USC § 1981;

(d)    Awarding reasonable attorney's fees and costs incurred in this action; and

(e)    Any such other and further relief as this Court deems just and equitable.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff respectfully requests a trial by jury.

Dated this 30th day of March 2023.

*/s/ Gary L. Printy, Jr.*
**GARY L. PRINTY, JR. ESQ.**
Florida Bar No. 41956
**PRINTY & PRINTY, P.A.**
3411 W Fletcher Ave, Ste A

Tampa, Florida 33618
(P): (813) 434-0649
(F): (813) 423-3722
Email: garyjr@printylawfirm.com
*Attorney for Plaintiff*